O5n2CarH

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    EMANUELE CAROLEO, individually
     and on behalf of all others
4    similarly situated, *et al.*,

5                   Plaintiffs,              New York, N.Y.

6            v.                              20 Civ. 4770 (JLR)

7    BOARD OF DIRECTORS ESTEE
     LAUDER INC., *et al.*,
8
                    Defendants.
9
     ------------------------------x        Fairness Hearing
10
                                            May 23, 2024
11                                          10:15 a.m.

12   Before:

13                   HON. JENNIFER L. ROCHON,

14                                          District Judge

15

16                          APPEARANCES

17

18   CAPOZZI ADLER, PC
          Attorneys for Plaintiffs
19   BY:  MARK K. GYANDOH

20

21   EDLESON LECHTZIN, LLP
          Attorneys for Plaintiffs
     BY:  ERIC LECHTZIN
22

23   JACKSON LEWIS, P.C.
          Attorneys for Defendants
24   BY:  RENE E. THORNE

25

O5n2CarH

1          (Case called)

2          THE LAW CLERK:  Counsel, please state your name for

3    the record.

4          MR. GYANDOH:  Good morning.  Mark Gyandoh, from

5    Capozzi Adler, on behalf of plaintiffs.

6          MR. LECHTZIN:  Eric Lechtzin, from Edelson Lechtzin,

7    on behalf of plaintiffs.

8          MS. THORNE:  Good morning, your Honor.  Rene Thorne,

9    on behalf of Estee Lauder and the Estee Lauder defendants.

10          THE COURT:  I'm sorry.  What was your last name?

11          MS. THORNE:  Thorne, T-H-O-R-N-E.

12          THE COURT:  Good morning, everyone.  I have

13    deliberately -- thank you for your patience.  I have

14    deliberately waited a few minutes before starting the

15    conference in the event that anyone who wishes to object can

16    appear.  There appears to be nobody in the courtroom at all

17    other than us, but notice has been provided.  Also, it was

18    quite rainy outside, and it's clearing up.

19          So Mr. Gyandoh, would you like to give me an update on

20    the settlement?  I did receive your financial reply submission

21    that more fully addressed the one objection that we have.  I

22    don't know if there are others, but that's the only one I am

23    aware of, and wanted to know any further update you would like

24    to provide.

25          MR. GYANDOH:  Thank you, your Honor.

O5n2CarH

1          Since our filing of the supplemental memorandum

2     nothing really of note has happened.  We are still at -- the

3     success rate for notice is still 97 percent, which is fantastic

4     from our point of view.  No one else has objected, just the one

5     objection which we addressed, so that's really it.

6          THE COURT:  Okay.  Anything that you would like to add

7     with respect to the fairness of the settlement or anything you

8     would like to augment in terms of your papers here today?

9          MR. GYANDOH:  Your Honor, I think our papers speak for

10    themselves.  We tried to document everything thoroughly.

11         The only thing I would emphasize is that, when looking

12    at the *Grinnell* factors that the Court does for final fairness

13    to determine whether the case -- whether the settlement is fair

14    and reasonable, I think here the fact that we had a neutral

15    third-party mediator that knew the case and the independent

16    fiduciary also signed off and we only had one objection out of

17    31,000 notices I think speaks volumes as to the fairness of the

18    case.

19         THE COURT:  Thank you very much.

20         Okay.  Ms. Thorne, is there anything that you would

21    like to add to the discussion or to the papers?

22         MS. THORNE:  No, your Honor.

23         THE COURT:  Okay.  And I presume you are in support of

24    the settlement.

25         MS. THORNE:  We are, your Honor.

O5n2CarH

1          THE COURT:  Okay, good.

2          All right.  So what I would propose to do -- and I

3     read the papers very closely, and they were excellent——thank

4     you all for them——is, in order to get you a decision quickly, I

5     would like to read my decision here from the bench, but I would

6     like to ask whether there is any objection.  What I have done

7     in the past is to read the name of a case that I cite and then

8     say "citation included" and then afterwards I will provide

9     those citations to the court reporter, who will add them to the

10    transcript, so you don't have to sit here while I read 24 F.3d

11    and all of the attendant numbers.  So I would say "citation

12    included" or "parenthetical included," and then they would be

13    included in to the final transcript even though I don't read

14    them aloud here.

15          Is there any objection to that, Mr. Gyandoh?

16          MR. GYANDOH:  No objection, your Honor.

17          THE COURT:  And Ms. Thorne.

18          MS. THORNE:  No objection.

19          THE COURT:  Okay.  So thank you for your patience.

20    It's kind of lengthy because I do want to make sure that I go

21    through everything, but let me give you my decision now.

22          Let's go off the record.

23          (Discussion off the record)

24          THE COURT:  We are back on the record.

25          This hearing was scheduled to consider approval of the

1    proposed settlement in the case of Caroleo v. Estee Lauder,

2    Inc, Case No. 20 Civ. 4770.  Kathy Gandy and Emanuele Caroleo,

3    (together, "the plaintiffs" or "lead plaintiffs") on behalf of

4    themselves and the settlement class, have moved for final

5    approval of the class action settlement between the class

6    and Estee Lauder, Inc., the Board of Directors of Estee Lauder,

7    Inc., the Estee Lauder, Inc., Fiduciary Investment Committee,

8    and the employee benefits committee of Estee Lauder, all

9    collectively known as "Estee Lauder" or "the defendants."

10    That's at ECF No. 160.

11        In the same motion, plaintiffs also seek the

12    reaffirmation of the Court's prior preliminary certification of

13    the settlement class and the proposed plan of allocation of the

14    proceeds of the settlement.  Separately, plaintiffs move for an

15    award of attorneys' fees, litigation expenses, and the costs

16    for lead counsel for the settlement class, Capozzi Adler, P.C.

17    and the class counsel executive committee member, Edelson

18    Lechtzin, LLP (collectively class counsel) ECF no. 162.

19    Defendants do not oppose these motions.

20        I have reviewed and considered the pending motions and

21    all other submissions and arguments made in connection with

22    these motions, in addition to all other papers and proceedings

23    submitted in this matter, and will now rule on the motions.

24        Lead plaintiffs, individually and on behalf of all

25    others similarly situated, and defendants have entered into a

1   class action settlement agreement to resolve claims alleging

2   breaches of fiduciary duties by defendants as plan fiduciaries

3   by, among other things, failing to investigate and select lower

4   cost alternative funds, failing to include a stable value fund

5   in the investment options, and failing to monitor or control

6   the plan's recordkeeping expenses.

7           On January 11, 2024, pursuant to Rule 23 of the

8   Federal Rules of Civil Procedure, the Court preliminarily

9   certified a settlement class for settlement purposes only.  The

10  settlement class was defined as:  "All persons, except

11  defendants and their immediate family members, who were

12  participants in or beneficiaries of the plan at any time from

13  September 22, 2024 through [January 11, 2024] (the class

14  period)."  ECF No. 157.  In the preliminary approval order, the

15  Court preliminarily found that the settlement class met all the

16  prerequisites of Federal Rule of Civil Procedure 23 for class

17  certification, for the purpose of settlement only, including

18  numerosity, commonality, typicality, predominance of common

19  issues, and superiority.  *Id.*  No material changes have

20  occurred since that order that would alter this Court's ruling.

21          The Court now finally approves certification of the

22  settlement class.

23          Rule 23(e) requires court approval for a class action

24  settlement to ensure that it is procedurally and substantively

25  fair, reasonable, and adequate.  Federal Rule of Civil

O5n2CarH

Procedure 23(e).  Under Rule 23(e)(2), a Court must consider whether:

    (A) the class representatives and class counsel have adequately represented the class;

    (B) the proposal was negotiated at arm's length;

    (C) the relief provided for the class is adequate, taking into account:

    (i) the costs risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class including the method of processing class members' claims;

    (iii) the terms of any proposed award of attorney's fees including timing of payment; and

    (iv) any agreement required to be identified under rule 12(e)(3) and (d) the proposal treats class members equitably relative to each other.

    The Court must consider both the procedural and the substantive fairness of the settlement.  *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009).  To determine procedural fairness, Courts examine the negotiating process leading to the settlement.  *Charron* v. *Wiener*, 731 F.3d 241, 247 (2d Cir. 2013); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005).  Courts in this circuit determine substantive fairness by analyzing the nine factors described in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448,

O5n2CarH

(2d Cir. 1974).  "The factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinnell* factors." *Pearlstein v. BlackBerry Ltd.*, No. 13-cv-07060 (CM), 2022 WL 4554858, at *7 (S.D.N.Y. Sept. 29, 2022*); see also, In Re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (the Rule 23(e)(2) factors "complement, rather than displace[,] each other"), *aff'd sub nom. Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.,* 62 F.4th 704 (2d Cir. 2023).

The Court will not presume fairness of the settlement even if it arises from an arm's length agreement.  *See Moses* v. *New York Times Company*, 79 F.4th 235, 243 (2d Cir. 2023) ("Rule 23(e)(2)'s procedural factors prohibit courts from applying a presumption of fairness to proposed settlements arising from an arms-length agreement.").  Rather the Court will evaluate all of the factors set forth in Rule 23(e)(2), including the proposed attorneys' fee award.  *Id.* at 243-46.

For the reasons set forth below, the settlement satisfies the factors set forth in Rule 23(e)(2) and *Grinnell* and, accordingly, the Court will approve the settlement.

In terms of procedural fairness, the settlement is procedurally fair, reasonable, adequate, and not a product of collusion.  Considering Rule 23(e)(2)(A) first, the Court determines whether the class representatives and class counsel have adequately represented the class.  To establish adequacy,

O5n2CarH

Courts look to whether the class representatives have

conflicting interests with other class members and whether

counsel is qualified, experienced, and generally able to

conduct the litigation. *See, e.g., Flores v. CGI,* No.

22-cv-00350 (KHP), 2022 WL 13804077, at *4 (S.D.N.Y. Oct. 21,

2022); *Soler v. Fresh Direct, LLC,* No. 20-cv-03431 (AT), 2023

WL 2492977, at *3 (S.D.N.Y. Mar. 14, 2023).

Lead plaintiffs here do not have interests that are

antagonistic or at odds with the putative class.  The record

also reflects that lead counsel is experienced and qualified

and prosecuted this case vigorously for its duration.  The

Court further finds that the settlement was reached after

exchanging discovery, dealing with extensive motion practice,

engaging in arm's length negotiations, and participating in

mediation before a qualified mediator, as described in the

parties' submissions.

Given the adequacy of representation, the

pre-settlement discovery, and the parties' arm's length

negotiation, I conclude that the settlement is procedurally

fair.

I also find that the settlement is substantively fair.

As previously mentioned, courts in this circuit look to the

nine-factor *Grinnell* test to assess the substantive fairness of

a settlement. *See, e.g., Hyland v. Navient Corp.*, 48 F.4th

110, 121 (2d Cir. 2022); *Charron,* 731 F.3d at 247.  The

O5n2CarH

*Grinnell* factors are:  "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all of the attendant risks of the litigation."  495 F.2d at 463 (citations omitted).  "Not every factor must weigh in favor of the settlement." *Christine Asia Co. v. Yun Ma*, Nos. 15-mc-02631, *et al.* (CM), 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019) (original brackets and citation omitted).  Rather, "the Court should consider the totality of these factors in light of the particular circumstances."  *Id.*

With respect to the first *Grinnell* factor, litigation through trial would be complex, expensive, and long. Additional discovery, including expert discovery, summary judgment motions, pretrial motions and submissions, and trial on potentially complicated issues would take significant time, as would any appeals from this Court's decisions.  Therefore, the first *Grinnell* factor weighs in favor of final approval here.

O5n2CarH

1    With respect to the second *Grinnell* factor, the class

2    members' reactions to the settlement have been largely positive

3    to date.  Class notice was mailed to over 31,267 potential

4    class members and, while opting out was not an option here,

5    there was only one objection who represents less than 0.003

6    percent of those who received the mail notice.  ECF No. 160 at

7    10-11; ECF No. 164-1 at ¶ 4, and ECF No. 164, which is the

8    reply, at 6.  "The fact that the vast majority of class members

9    neither objected to nor opted out is a strong indication of

10    fairness."  *Sow v. City of New York,* No. 21-cv-00533 (CM), 2024

11    WL 964595, at *2 (S.D.N.Y. Mar. 5, 2024) (citation omitted).

12    So too here:  The overwhelmingly favorable response

13    demonstrates that the class approves of the settlement and

14    supports final approval.

15    Importantly, an independent fiduciary was also

16    appointed to review the settlement and Stephen Calfish of

17    Fiduciary Counselors supports the settlement accordingly.  ECF

18    No. 164-2.  This is important for purposes of satisfying the

19    DOL's Prohibited Transaction Exemption 2003-39 with a

20    determination by an independent fiduciary who finds that the

21    plan received fair value for the release and that the

22    settlement is reasonable.  *Id.*

23    The Court will now address the objection filed by

24    Ms. Renee Curwick, whose objection primarily focuses on the fee

25    award.  Ms. Curwick, a contributor to the 401(k) plan,

O5n2CarH

1    understandably is concerned about the attorneys' fee portion of

2    the settlement at 33 1/3 percent, plus expenses.  She asserts

3    that the company should be responsible for paying for the

4    attorneys' fees and expenses rather than have those fees paid

5    from the settlement fund.  ECF No. 158.  If she is referring to

6    fees for defendants' counsel when she refers to "their

7    lawyers," that objection is moot because defense counsel's fees

8    are not being paid for by the fund.  But assuming she is

9    referring to plaintiffs' counsel, counsel for the objector

10   herself, class counsel obtained a benefit for Ms. Curwick and

11   all class members by securing monies for the class members,

12   which would not have been done absent their efforts, and

13   compensation is therefore appropriate.  Compensation as part of

14   the common fund aligns the interests of the class and counsel

15   and is also a common approach to which Ms. Curwick cites no

16   contrary authority.

17          An award of 33 1/3 percent of the common fund in an

18   ERISA case is common nationwide.  Reply at 3-4 (collecting

19   cases).  Fiduciary Counselors, a neutral third party, also

20   evaluated the objection, found it to be without merit, and

21   found the award of fees to be reasonable on April 23, 2024.

22   ECF No. 164-2.  Indeed, the independent fiduciary concluded

23   that "attorneys' fees are typically paid out of the common

24   fund.  This objection does not change our conclusion that the

25   settlement is reasonable."  ECF No. 164-2 at 4.

O5n2CarH

1          I will also be evaluating the reasonableness of the

2    amount of fees to ensure that counsel is not receiving a

3    disproportionate share or a windfall of the proceeds of the

4    settlement, which is not the case here given that the amounts

5    actually expended by counsel in fees is higher than the fees

6    that will actually be awarded.  *See In re Marsh ERISA*

7    *Litigation,* 265 F.R.D. 128, 151 (SDNY 2010) (rejection

8    objection to fee award in ERISA class action because loadstar

9    is above the requested fee).  Therefore, the Court is rejecting

10   and overruling the single objection to this settlement.

11   Indeed, the Court finds the reasoning in *In re Marsh ERISA*

12   *Litigation* particularly persuasive in evaluating and ultimately

13   rejecting objections like this to an ERISA settlement and the

14   Court overrules this single objection for the same reasons set

15   forth in that case.  *Id.* at 147-50.  Having resolved this

16   objection and considering that there was just a single

17   objection to the settlement, this factor thus weighs in favor

18   of approval.

19          With respect to the third *Grinnell* factor, the stage

20   of the proceedings, the parties have engaged in discovery,

21   produced thousands of pages of documents, completed multiple

22   depositions, and engaged in expert discovery.  The case was

23   litigated for almost three years with extensive motion

24   practice.  The parties had ample appreciation of the merits of

25   the case before negotiating a settlement which weighs in favor

O5n2CarH

1  of approval.  *See Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 476

2  (S.D.N.Y. 2013).  Therefore, the Court finds that this factor

3  favors final approval.

4          The fourth, fifth, and sixth *Grinnell* factors, the

5  risks of establishing liability and damages and maintain class

6  certification through trial, further favor approval.  "In

7  assessing the risks of liability, a Court need not decide the

8  merits of the case, resolve unsettled legal questions, or

9  attempt to predict the outcome.  Rather, a court need only

10  assess the risks of litigation against the certainty of

11  recovery under the proposed settlement."  *In re Namenda Direct*

12  *Purchaser Antitrust Litigation,* 462 F. Supp. 3d 307, 313

13  (S.D.N.Y. 2020) (quotation marks and citation omitted).  Here,

14  plaintiffs would have faced numerous risks if they had

15  continued to litigation.  Defendants deny liability and, absent

16  settlement, plaintiffs would have to defeat defendants'

17  anticipated motion for summary judgment, class certification,

18  and then prosecute the case through trial and appeals.  Proving

19  damages in breach of fiduciary duty ERISA cases is also

20  difficult and the legal and factual uncertainties of proving

21  such damages "also militate in favor of settlement."  *In re*

22  *Global Crossing Securities and ERISA Litigation,* 225 FRD 436,

23  360 (SDNY 2004).  The proposed settlement eliminates those

24  uncertainties.  The fourth, fifth, and six *Grinnell* factors

25  thus way in favor of final approval.

O5n2CarH

1        Turning to the seventh *Grinnell* factor, there is

2   nothing to suggest that defendants would be unable to withstand

3   a greater judgment.  "However, a defendant is not required to

4   empty its coffers before a settlement can be found adequate."

5   *Stinson v. City of New York,* 256 F. Supp. 3d 283, 294 (S.D.N.Y.

6   2017) (quotation marks and citation omitted).  The Court does

7   not find this factor to impede settlement given the orientation

8   of the other *Grinnell* factors.

9        Finally, the amount of the settlement, in light of the

10  best possible recovery and the attendant risks of litigation,

11  weighs in favor of final approval.  The determination of

12  whether a settlement amount is reasonable "is not susceptible

13  of a mathematical equation yielding a particularized sum.  *City*

14  *of Providence v. Aeropostale, Inc.,* No. 11-cv-07132 (CM), 2014

15  WL 1883494, at *9 (S.D.N.Y. May 9, 2014) (citation omitted).

16  Instead, as Chief Judge Friendly explained, "There is a range

17  of reasonableness with respect to a settlement——a range which

18  recognizes the uncertainties of law and fact in a particular

19  case and the concomitant risks and costs necessarily inherent

20  in taking any litigation to completion." *Newman v. Stein*, 464

21  F.2d 689, 693 (2d Cir. 1972).  Here, the total monetary

22  settlement is $975,000.  The parties disagree on the range of

23  potential recovery, even if plaintiffs were to prevail on

24  liability with the best case damages scenario at $9.9 million

25  but if the Court were to find that plaintiffs were not

O5n2CarH

overcharged by 100 percent, which may well be the case, the
damages could be as low as $2.8 million. *See* ECF No. 160.  The
settlement amount is therefore between 10 to 34 percent of the
potential recovery which is within the range of recovery of
other approved class action settlements as set forth in
plaintiff's brief at 15-16.  Thus, I find that the amount of
this immediate cash recovery is reasonable and that, therefore,
this factor too weighs in favor of final approval.

Holistically weighing the *Grinnell* factors, I find
that the settlement is substantively fair and weighs in favor
of final approval.

The Court now turns to the Rule 23(e)'s remaining
factors.  To begin with, I find that the proposed method of
distribution of distributing proceeds directly into the account
of the current plan participants and payments by the settlement
administrator to former participants is effective and
consistent with standard means that are frequently used in
similar class actions. *See* Federal Rule of Civil Procedure
23(e)(2)(C)(ii).

As will be discussed further in the context of the
attorneys' fee request, the proposed award of attorneys' fees
is fair and reasonable when the terms of the proposed award are
considered. *See* Federal Rule of Civil Procedure
23(e)(2)(C)(iii).  To be clear, the Court is not reviewing the
settlement agreement independent of the attorneys' fees

O5n2CarH

1    requested given the Second Circuit's direction in *Moses*.

2    Rather, I am conducting a "symbiotic review" of the proposed

3    settlement and the attorneys' fees to make sure that there is

4    not an "unwarranted windfall for attorneys."  79 F.4th at 244.

5         The parties are also required to identify agreements

6    entered into in connection with the settlement.  Federal Rule

7    of Civil Procedure 23(e)(2)(C)(iv) and 23(e)(3) require that

8    the parties seeking approval file a statement identifying any

9    agreement made in connection with the proposal and that I

10   consider any such agreements in my evaluation of the

11   settlement.  The parties have represented that there are no

12   agreements other than the settlement agreement.  ECF No. 160 at

13   16, n.7.

14        Mr. Gyandoh, do you continue to make that

15   representation?

16        MR. GYANDOH:  Yes, your Honor.

17        THE COURT:  Thank you very much.

18        Finally, the settlement treats class members equitably

19   to one another.  Federal Rule of Civil Procedure 23(e)(2)(D).

20   As discussed further below, the plan of allocation provides

21   that each plaintiff's share of the settlement will be based on

22   a formula tied to the losses to their plan account.  Each

23   member will receive their *pro rata* share of losses and all

24   settlement class members will receive at least $10.  This *pro*

25   *rata* allocation and distribution is equitable.  *See, e.g, In re*

O5n2CarH

*Delphi Corp. Securities, Derivative & "ERISA" Litigation,* 248 F.R.D. 483, 491-93 (E.D. Mich. 2008) (finding equitable in ERISA settlement that proceeds were "allocated to the ERISA Class Members on a pro rata basis pursuant to a Plan of Allocation based upon each Class Member's proportionate loss from Plan investments in the Delphi and/or GM Stock funds"). Moreover, the award reimbursement of fees and expenses for the lead plaintiffs is reasonable for the reasons that I will soon discuss.  Again, to be clear, I am evaluating the payments to the lead plaintiffs as part of the analysis under Rule 23(e)(2)(D), as required by *Moses*.

         The Court will next evaluate the plan of allocation here to determine whether it is fair and adequate.  "A plan of allocation need not be perfect."  *In re EVCI Career Colleges Holding Corp. Securities Litigation,* Nos. 05-cv-10240 *et al.* (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007) (collecting cases), or "tailored to the rights of each plaintiff with mathematical precision," *In re PaineWebber,* 171 F.R.D. at 133.  Thus, "[i]n determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel."  *In re EVCI,* 2007 WL 2230177, at *11.  A plan is more likely to be reasonable "if recommended by experienced and competent counsel."  *Villa v. Highbury Concrete Inc.,* No. 17-cv-00984 (PK), 2022 WL 19073649, at *4 (E.D.N.Y. Nov. 25, 2022).  Aside from being recommended by counsel, the allocation

O5n2CarH

1    method here equitably allocates the settlement fund based on a

2    class member's *pro rata* share based on account balances, which

3    is an appropriate proxy for alleged losses.  The allocation

4    method also provides a class member with at least a $10

5    recovery if the loss is smaller than $10.

6              Because the plan of allocation has a clear, rational

7    basis, equitably treats the class members, and was devised by

8    experienced counsel, the Court finds it fair and adequate.

9              I will next evaluate the dissemination of notice here

10   to determine whether it satisfies Rule 23 and due process

11   considerations.  The notice plan is described extensively in

12   the Mitchell declaration at ECF No. 163-2 and related exhibits.

13   *See also* ECF No. 164-1.  I find that the various notices

14   included all of the information required by Rule 23.  I also

15   find that these efforts to notify class members fairly and

16   adequately advised class members of the terms of the

17   settlement.  In particular, the notice informed class members

18   of the deadline and manner in which they were required to

19   submit a claim form to be eligible for a distribution, and

20   informed all class members of their rights, including their

21   right to object to the settlement and to attend the final

22   fairness hearing today.  Again, no one has appeared at this

23   hearing today.  I further find that the notice and its

24   distribution comported with all constitutional requirements,

25   including those of due process.

O5n2CarH

1        The Court will next consider the requests for fees,

2   litigation expenses, and award payments.  Lead counsel requests

3   attorneys' fees in the amount of 33 1/3 percent of the

4   settlement amount of $975,000 or $324,964.50.  ECF No. 162

5   ("Fees Br.") at 1.

6        MR. GYANDOH:  Your Honor --

7        THE COURT:  Yes.

8        MR. GYANDOH:  I apologize for interrupting.  I believe

9   it is $324,967.50.

10        THE COURT:  Yes?

11        MR. GYANDOH:  I thought you said 54.  I apologize.

12        THE COURT:  Oh, no, no, no.  Let me make sure it is

13   clear.  Thank you for catching that.  $324,967.50, is that

14   correct?

15        MR. GYANDOH:  That's correct, your Honor.

16        THE COURT:  Thank you very much.

17        *See* Federal Rule of Civil Procedure 23(h).  (In a

18   certified class action, the court may award reasonable

19   attorney's fees and nontaxable costs that are authorized by law

20   or by the parties' agreement.").  Lead counsel also seeks

21   reimbursement of $83,717.46 in litigation expenses incurred.

22   ("Fees Br.") at 2.  Also, each of the two lead plaintiffs seek

23   approval of a case contribution award of $10,000 for their

24   contributions to this action.  *Id.*

25        The Court will handle the latter two requests first

O5n2CarH

because they are more straightforward and then turn to the issue of attorneys' fees.

As noted, lead counsel seeks reimbursement of a total of $83,717.46 in litigation expenses incurred, including for experts, mediators, deposition fees, court fees and travel. ECF No. 163 at ¶¶ 49, 50.  It is well-settled that class counsel may recover reasonable expenses of litigation from a common fund.  *See, e.g., Bekker v. Neuberger Berman Group 401(k) Plan Investment Committee,* 504 F. Supp. 3d 265, 269 (S.D.N.Y. 2020); *Meredith Corp. v. SESAC, LLC,* 87 F. Supp. 3d 650, 671 (S.D.N.Y. 2015).  Reviewing the materials submitted by lead counsel, the Court finds the expense requests to be reasonable and justified.  This amount also falls under the cap of $100,000 for expenses that the settlement agreement and notice provided to the class members.  ECF No. 164 at ¶ 37. The Court therefore grants lead counsel's request for reimbursement of $83,717.46 in litigation expenses.

Turning to the award payments, plaintiffs request a $10,000 case contribution award for each of the two lead plaintiffs.  ECF No. 162 at 16.  In *Moses*, the Second Circuit reaffirmed that district courts may "approve fair and appropriate incentive awards to class representatives."  79 F.4th at 253.  Such payments are "usually within the range of $1,000 to $20,000."  *Id.* at 255 n.12.  Each of the lead plaintiffs has submitted a declaration that describes their

O5n2CarH

1   efforts in this action, including being subject to a

2   deposition.  *See* ECF No. 163-8 and 163-9.  The Court finds that

3   the requested award payments are reasonable and not excessive

4   or otherwise inequitable.  This amount was also previewed and

5   disclosed in the settlement agreement and notice provided to

6   class members.  ECF No. 164 ¶ 37.  The Court therefore grants

7   the requests for a $10,000 award for each of the lead

8   plaintiffs.

9        The Court now turns to the issue of attorneys' fees.

10   In their final fee application, class counsel specifically

11   request attorneys' fees in the amount of 33 1/3 percent of the

12   settlement fund or $324,967.50.  ECF No. 162 at 1.

13        The only objection that was filed in this case was by

14   Ms. Curwick, at ECF No. 158, and this Court has already

15   discussed and rejected that objection.  And as part of the

16   overruling of that objection, the Court will continue to review

17   the reasonableness of the fee award requested as previewed

18   earlier.  "What constitutes a reasonable fee is properly

19   committed to the sound discretion of the district court."

20   *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 47 (2d

21   Cir. 2000).  A fee applicant must "submit appropriate

22   documentation to meet the burden of establishing entitlement to

23   an award.  But trial courts need not, and indeed should not,

24   become green-eyeshade accountants.  The essential goal . . . is

25   to do rough justice, not to achieve auditing perfection.  So

O5n2CarH

1    trial courts may take into account their overall sense of a

2    suit and may use estimates in calculating and allocating an

3    attorney's time." *Fox v. Vice,* 563 U.S. 826, 838 (2011)

4    (quotation marks and citation omitted).

5           The trend in the Second Circuit is to use the

6    percentage-of-the-fund method to compensate attorneys in

7    common-fund cases, although the Court has discretion to award

8    attorneys' fees based on either the lodestar method or the

9    percentage-of-recovery method. *See, e.g., Fikes,* 62 F.4th at

10   723; *Wal-Mart,* 396 F.3d at 121.

11          Reasonableness is the touchstone when determining

12   whether to award attorneys' fees.  In *Goldberger*, the Second

13   Circuit set forth six factors to determine the reasonableness

14   of a fee application: (1) the time and labor expended by

15   counsel; (2) the magnitude and complexities of the litigation;

16   (3) the risks of the litigation; (4) the quality of

17   representation; (5) the requested fee in relation to the

18   settlement; and (6) public policy considerations.  209 F.3d at

19   50.  The Court will evaluate each of these factors in turn.

20          In terms of lead counsel's time and labor, lead

21   counsel's fee declaration shows a total of 1,233 hours spent on

22   the litigation as of April 10, 2024, resulting in a lodestar of

23   $866,340.80.  ECF No. 163 ¶ 56.  More time will be spent

24   finalizing the administration of this settlement. *Id.* ¶ 57.

25   Lead counsel spent extensive efforts investigating the claims,

O5n2CarH

1    engaging in motion practice on the motion to dismiss, and

2    ultimately defeating that motion and a motion for

3    reconsideration, engaging in document discovery and

4    depositions, working with experts, and ultimately negotiating

5    and obtaining this proposed settlement over the course of about

6    three years.  ECF No. 162 at 4.

7         I find that lead counsel expended considerable time

8    and labor to achieve the settlement in this case.  Thus, this

9    *Goldberger* factor weighs in favor of final approval.

10        The complexity of the issues in this case are

11   significant factor to be considered in making a fee award.  *In*

12   *re Prudential Securities Inc. Ltd. Partnership Litigation,* 912

13   F. Supp. 97, 100 (S.D.N.Y. 1996).  The case involved several

14   potentially complicated issues of fact and law as evidenced by

15   a motion to dismiss, a motion for reconsideration, and then a

16   motion to stay the proceedings pending a decision of the U.S.

17   Supreme Court.  The Court thus finds that the amount sought by

18   lead counsel is commensurate with the magnitude and complexity

19   of this litigation and that this *Goldberger* factor weighs in

20   favor of approving the requested fee award.

21        In terms of risks of the litigation, "Courts in the

22   Second Circuit have recognized that the risk associated with a

23   case undertaken on a contingent fee basis is an important

24   factor in determining an appropriate fee award."  *In re Flag*

25   *Telecom Holdings, Ltd. Securities Litigation,* No. 02-cv-03400

O5n2CarH

(CM), 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010).  Here,
lead counsel faced risk in prosecuting this action and proving
the merits of the claims given the complex ERISA claims here.
And, because lead counsel operated on a contingency basis, they
(unlike presumably counsel for defendants) would not be paid if
the case ended unfavorably for them and their clients.
Therefore, I find that this *Goldberger* factor weighs in favor
of the approval of the fee award.

In terms of quality of representation, lead counsel
has considerable experience in ERISA lawsuits.  *See generally*
ECF No. 163 ¶¶ 75, 76; ECF No. 163-11 ¶¶ 4, 7.  Their firms
have similarly developed strong reputations for their competent
representation.  The Court has no reason to doubt the quality
of their representation.

The high quality of defense counsel opposing
plaintiffs' efforts further supports the caliber of
representation that was necessary to achieve the settlement.
Defendants were represented in this case by a prominent defense
firm, Jackson Lewis P.C., who has experience in defending ERISA
class actions.  "The ability of plaintiffs' counsel to obtain a
favorable settlement for the class in the face of such
formidable legal opposition confirms the quality of their
representation of the class."  *In re Marsh ERISA Litig.,* 265
F.R.D. 128, 148 (S.D.N.Y. 2010); *see also Christine Asia*, 2019
WL 5257534, at *19 ("One marker of the quality of

O5n2CarH

representation the Class received is the quality of the result
obtained."). Accordingly, I find that this *Goldberger* factor
weighs in favor of approving the requested fee award.

Next, generally courts must consider the size of a
settlement to ensure that the percentage awarded does not
constitute a windfall. An award of 33 1/3 percent of a common
fund is in line with awards that Courts generally find
reasonable and the Court so finds here. ECF No. 162 at 7–8.
The fee award also constitutes about 10–34 percent of the
settlement award, which the Court finds to be a reasonable
percentage for the reasons discussed earlier.

When determining whether a fee award is reasonable,
courts finally consider the social and economic value of the
class action, "and the need to encourage experienced and able
counsel to undertake such litigation." *In re Sumitomo Copper
Litigation,* 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999). Although
the Court expresses no conclusive views about the merits of
plaintiffs' allegations in this case, incentivizing firms to
take these types of cases on a contingency basis to pursue the
rights of retirement benefit holders is certainly a laudable
goal and in the public interest. Public policy therefore
favors granting lead counsel's fee request.

Upon considering all of the *Goldberger* factors, the
Court concludes that the requested fee award is reasonable
subject to the following lodestar cross-check, which more than

O5n2CarH

1    confirms the reasonableness of the award here.

2            As mentioned previously, to ensure the reasonableness

3    of a fee awarded under the percentage-of-the-fund method,

4    district courts may cross-check the proposed award against

5    counsel's lodestar.  *See Goldberger*, 209 F.3d at 50.  "Of

6    course, where used as a mere cross-check, the hours documented

7    by counsel need not be exhaustively scrutinized by the district

8    court."  *Id.*  Lead counsel submitted a summary of time records

9    detailing the billable rate and hours worked by the attorneys

10   and professional staff who recorded time in this matter.  ECF

11   No. 163, 163-11.  I find that these billable rates, based on

12   the timekeeper's title and market rates for similar

13   professionals in their fields, to be reasonable in this

14   context.

15           According to lead counsel's fee declaration, lead

16   counsel expended 1,233 hours in attorney and professional staff

17   time over the course of the action.  Based on the hourly rates

18   and work performed, the total lodestar for lead counsel is

19   $866,340.80.  And this does not include additional time that

20   lead counsel has devoted and will devote to overseeing and

21   assisting in the administration of the settlement.

22           Lead counsel's requested fee therefore represents a

23   cross-check multiplier of 0.375 on lead counsel's lodestar.

24   This lodestar multiplier falls well within the range of

25   multipliers typically awarded in this circuit.  *See, e.g., In*

O5n2CarH

*re Signet Jewelers Ltd. Securities Litigation,* No. 16-cv-06728 (CM), 2020 WL 4196468, at *16 (S.D.N.Y. July 21, 2020) ("In complex litigation, lodestar multipliers between 2 and 5 are commonly awarded, and fee awards resulting in multipliers as high as 6 have also been approved."); *Fleisher v. Phoenix Life Insurance Co.,* Nos. 11-cv-08405 *et al.* (CM), 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2015) (similar). Indeed, lead counsel is recovering less fees than they expended in this litigation, presumably given its length and complexity. Thus, the lodestar cross-check confirms that lead counsel's requested fees are reasonable.

       To sum up, the Court finds that the requested fee award of a maximum of $324,967.50 is reasonable. It is within the range of what courts in this circuit regularly award in class actions such as this one, ECF No. 162 at 9-10, whether calculated as a percentage of the fund or in relation to the lodestar. Moreover, as discussed, the factors established for the review of attorneys' fees awards in *Goldberger* support the conclusion that the requested fee is reasonable.

       This is a consideration in evaluating the fairness of the class action settlement as well. And this is a final reason why the objection—the sole objection—that was filed in this case is overruled and rejected.

       Therefore, in conclusion and based on all of the foregoing findings, I am reaffirming the Court's certification

O5n2CarH

1  of the class for purposes of effectuating the settlement.  I

2  approve the settlement agreement and I grant the requested

3  award of fees, litigation expenses, and lead plaintiff awards.

4          So I expect to enter an order and judgment consistent

5  with the parties' proposal.  I would just ask, Mr. Gyandoh, if

6  you could please send me Word versions to the Court's e-mail of

7  ECF Nos. 160-1 and 162-1.

8          MR. GYANDOH:  Of course, your Honor.

9          THE COURT:  Thank you.  If you could send them today,

10  then I can see if there is any changes that I wish to make and

11  otherwise enter those.

12          All right.  Is there anything that anyone would like

13  to add or any issues with the opinion that I have just

14  delivered?

15          Mr. Gyandoh.

16          MR. GYANDOH:  No, your Honor.  Thank you.

17          THE COURT:  Thank you.

18          Mr. Lechtzin?

19          MR. LECHTZIN:  No, your Honor.  Thank you.

20          THE COURT:  Thank you.

21          Ms. Thorne?

22          MS. THORNE:  None, your Honor.  Thank you very much.

23          THE COURT:  Okay, good.

24          All right.  Well, I wish you all the best in

25  administering this settlement.  I know it's been a bit of a

O5n2CarH

1    long road, but I hope that this provides some closure and some

2    benefit to those class members as well as to the company

3    itself.

4              All right.  Anything further today, Mr. Gyandoh?

5              MR. GYANDOH:  Nothing, your Honor.  Thank you.

6              THE COURT:  Thank you.

7              Ms. Thorne.

8              MS. THORNE:  No, your Honor.  Thank you.

9              THE COURT:  All right.  Thank you all very much, and

10    court is adjourned.  Thank you for your patience.

11                              oOo

12

13

14

15

16

17

18

19

20

21

22

23

24

25